## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stanley G. Gray, )<br><br>Plaintiff, )<br><br>v. )<br><br>The Honorable James E. McPherson )<br>Acting Secretary of the Navy )<br>Department of the Navy, )<br><br>Defendant. ) | CIVIL ACTION NO. 1:20-cv-01025 |

## COMPLAINT

1.   This complaint concerns review of a final decision of the Board for Correction of Naval Records ("BCNR") in which the BCNR denied disabled United States Marine Corps veteran Stanley Gray's request to correct his discharge classification to medical disability retirement to accurately reflect his condition at the time of discharge.

## I.   JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Mr. Gray raises claims arising under federal statutes and military regulations.

3.   The federal statutes upon which jurisdiction rests are the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., which authorizes this Court to review and reverse decisions of the BCNR that are arbitrary, capricious, unsupported by the evidence or otherwise contrary to law, and 10 U.S.C. § 1552, which allows for a service member to apply to the BNCR to correct errors to his military record or remove an injustice.

4.   Venue is proper pursuant to 5 U.S.C. § 703 as the defendant resides in the District of Columbia. *See Smith v. Dalton*, 927 F. Supp. 1 (D.D.C. 1996).

5.   Mr. Gray is a citizen of the United States.

## II.     THE PARTIES

6.     Plaintiff, Mr. Gray, is a United States Marine Corps veteran who served honorably on active duty for over 10 years and currently resides at the address provided in the caption above.

7.     The United States Marine Corps is a component of the Department of the Navy.

8.     Defendant is the Honorable James E. McPherson, Acting Secretary of the Navy, who is named as Defendant in his official capacity only as the head of the Department of the Navy.  The BCNR acts on behalf of the Defendant, and the Defendant has final authority over the BCNR's decisions regarding corrections of naval records.  10 U.S.C. § 1552.  Defendant resides at the address provided in the caption above.

## III.     STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Mr. Gray was discharged from the United States Marine Corps on April 30, 1988 after serving honorably and with distinction for over 10 years.

10.  In 2017, Mr. Gray submitted his most recent application to the BCNR to correct the discharge classification on his Certificate of Release or Discharge from Active Duty that was issued to Mr. Gray when he was discharged from active duty.

11.  On April 9, 2018, the BCNR waived the statute of limitations for applying for corrections and issued a final decision denying Mr. Gray's application.

12.  This Complaint is filed within six years of the final decision rendered by the BCNR and is timely filed.  28 U.S.C. § 2401(a).

## IV.     **STATEMENT OF FACTS**

13.  On July 9, 1973, Mr. Gray entered the United States Naval Academy to begin his undergraduate studies and officer training.

14.  On June 8, 1977, Mr. Gray entered the Marine Corps as a Second Lieutenant after graduating from the United States Naval Academy.

15.  Mr. Gray served on active duty from 1977 to 1988, and throughout his honorable service in physically demanding positions he suffered from various injuries requiring 11 different medical operations.

16.  Early in his career, Mr. Gray served for several years in positions that required parachuting, rappelling, and scuba diving where his body was continually subjected to hard parachute landings and stressful underwater training.  While parachuting, Mr. Gray suffered a significant injury to his right shoulder.

17.  On January 17, 1984, Mr. Gray was finally able to receive surgery for his right shoulder at the National Naval Medical Center in Bethesda, Maryland but the pain and discomfort never fully abated.

18.  During this same time period, Mr. Gray also suffered from pain and decrease in movement for his left shoulder for one and a half years and on April 3, 1984, he had surgery on his left shoulder at the National Naval Medical Center in Bethesda, Maryland to attempt to correct that issue.

19.  Mr. Gray also suffered left knee pain that he tolerated for eight years until on August 23, 1984 when he underwent an arthroscopic surgery in an attempt to alleviate the pain and return him to his full capabilities.

20.   Then, in and around September 1987, after 10 years of active duty service with constant wear and tear to his lower body, Mr. Gray reported that he had persistent right hip pain during an orthopedic exam.  The orthopedist diagnosed a serious hip condition that would require advanced treatment options, including a possible experimental stem-cell treatment called the McMurray process.

21.   On October 22, 1987, Mr. Gray had a follow-up visit where he was provided with three treatment options for his right hip condition; the experimental McMurray treatment was again offered as an option and the physician stated that it had a 30% chance of success, but, unlike the other options, if it was successful it would allow Mr. Gray continue to serve on active duty.

22.   On November 30, 1987, Mr. Gray underwent surgery to implement the experimental McMurray stem cell treatment and was discharged from the hospital on December 8, 1987.

23.   Sometime in November or December 1987, Mr. Gray was referred to a Medical Evaluation Board ("MEB").

24.    On December 10, 1987, a few days after Mr. Gray's discharge from the hospital, the MEB Report opined that Mr. Gray was unfit for full duty due to his left shoulder injury and right hip injury, it referred him to the Central Physical Evaluation Board (CPEB), and determined that Mr. Gray's hip surgery would likely require 12 months of rehabilitation.

25.   On December 21, 1987, Mr. Gray went to a follow-up visit where the surgeon wrote that it was too early to determine whether the surgery would be a success, or whether Mr. Gray would need further treatment.

26.   On January 6, 1988, Mr. Gray submitted a rebuttal to the MEB Report contending that the proposed disability determination did not consider the injuries sustained to his left knee and right shoulder.

27.   On January 21, 1988, the CPEB notified Mr. Gray that it recommended to the Secretary of the Navy that Mr. Gray was unfit for full duty because of physical disability.

28.   The CPEB also determined that his unfit condition was his hip condition following surgery, recognized that it may be a permanent disability, and rated his disability at a mere 10%.

29.   Prior to Mr. Gray's discharge from the Navy, he was told by his orthopedic surgeon that the trial McMurray stem cell process had been ineffective and that he could return to the National Naval Medical Center, regardless of his service status, to receive a hip replacement when the pain became unbearable.

30.   On April 30, 1988, Mr. Gray was discharged from the Marine Corps for physical disability with severance pay and was rated by the Navy with a 10% hip disability based on the same diagnostic codes used by the Veterans Administration ("VA").

31.   On May 1, 1988, the VA determined that Mr. Gray had a combined disability rating of 40%, including 10% for a total right hip replacement diagnostic code of 5010-5054.

32.   On September 11, 1989, Mr. Gray submitted an application to the BCNR to correct his naval records requesting his discharge classification be changed to medical retirement because the CPEB failed to recognize the severity of his disabilities.

33.   On August 1, 1990, Mr. Gray returned to the National Naval Medical Center due to complications with his right hip and was diagnosed with degenerative joint disease by the same

physicians that performed his initial surgery.  And on that same day the VA rated Mr. Gray as having a 30% disability for diagnostic code 5010-5054.

34.  On November 13, 1990, the BCNR denied Mr. Gray's request to correct his naval records stating there was insufficient evidence of the existence of probable material error or injustice.

35.  On May 23, 1991, Mr. Gray's right hip was replaced by physicians at the National Naval Medical Center because the physicians determined that the McMurray treatment was unsuccessful and further damaged Mr. Gray's hip.

36.  Shortly after the surgery, the VA determined that Mr. Gray was 100% disabled starting on May 23, 1991 and was continually rated at 100% disability since 2005.

37.  In May 2017, Mr. Gray believed he had material new evidence and submitted another application requesting that the BCNR correct his discharge classification from "Severance" to "Medical Disability Retirement," or in the alternative to the "Temporary Disability Retired List" ("TDRL"), due to the unforeseeable outcome of his hip surgery at the time of discharge.

38.  In his application, Mr. Gray argued that the Physical Evaluation Board ("PEB") erred in granting Mr. Gray disability with severance pay when he should have been retired due to permanent medical disability.

39.  In support of his application, Mr. Gray provided written argument detailing the evidence at the time of his discharge that indicated Mr. Gray's injuries were likely to be permanently disabling.

40.  Mr. Gray's BNCR application included his service medical records that documented the severity of his hip and shoulder injuries at the time of discharge.

41.   On January 2, 2018, the Director for the Council of Review Boards submitted an advisory opinion to the BNCR recommending that Mr. Gray's application be denied.  Mr. Gray submitted a rebuttal to the advisory opinion.

42.   On April 9, 2018, the BCNR, in the interests of justice, waived the statute of limitations, and considered the merits of Mr. Gray's application, but ultimately denied the requested relief for Mr. Gray who has been disabled since his discharge.

43.   Mr. Gray continues to endure hardship and difficulties from the lasting effects of his military service that have not yet been appropriately compensated.

## V.   LEGAL CLAIM

### A.   THE BNCR VIOLATED MR. GRAY'S RIGHT UNDER 10 U.S.C. § 1552 TO CORRECT AN ERROR OR REMOVE AN INJUSTICE FROM HIS MILITARY RECORD

44.   Paragraphs 1 through 43 are incorporated herein by reference.

45.   The BNCR's April 9, 2018 decision violated Mr. Gray's right to have errors and injustices in his military record corrected pursuant to 10 U.S.C. § 1552 because it denied Mr. Gray's request to correct his military record to accurately reflect his disability and characterization of service at the time of discharge.

46.   The BNCR's decision violated Mr. Gray's right pursuant to 10 U.S.C. § 1552 because it was arbitrary, capricious, and not adequately supported by substantial evidence as required by 5 U.S.C. § 701 *et seq*.

47.   The BCNR's final decision was arbitrary and capricious because it failed to consider or respond to Mr. Gray's non-frivolous arguments that would have affected the BCNR's ultimate disposition.  *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) ("However, because the

Board's decision did not respond to two of Frizelle's arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition, we conclude that the Board's decision was arbitrary.").

48. Mr. Gray presented medical evidence and argument to the BCNR that the CPEB erred when it rated Mr. Gray under Veteran Affairs Schedule for Rating Disabilities ("VASRD") code 5003 for arthritis when he should have been rated under ratings in VASRD 5010-5054. Including VASRD 5054 for total hip replacement or VASRD 5250 for ankylosis of the hip. Ankylosis is an immobility and consolidation of a joint due to disease, injury, or surgical procedure.

49. To be placed on the TDRL, a service member that has less than 20 years of active service must have at least a 30% disability rating.

50. Mr. Gray's original classification, VASRD 5003, provided for only a maximum disability rating of 10%; whereas Naval guidance regarding VASRD 5054 provided that in "uncomplicated cases the member is usually ambulatory and disposition is possible approximately 1-3 month[s] after the procedure has been performed. Assignment to the TDRL, with an appropriate rating, is usually required prior to permanent disposition."

51. VASRD 5054 should have been applied to Mr. Gray's case because 38 C.F.R. 4.20 provides that when an "unlisted condition is encountered it will be permissible to rate under a closely related disease or injury."

52. When Mr. Gray was offered the McMurray treatment, an unlisted and experimental condition, his only other two options were a hip replacement or a hip fusion. Thus, the underlying severity of Mr. Gray's hip condition was equal to a hip replacement and the McMurray treatment he eventually received should have been rated similarly.

53. Additionally, the VA rated Mr. Gray under VASRD 5054 shortly after being discharged from the Marine Corps.  Thus, another military disability institution, applying the same diagnostic codes, opined that Mr. Gray's unlisted condition was analogous to VASRD 5054.

54. Mr. Gray's argument is non-frivolous because had the BCNR considered a rating under VASRD 5054 then Mr. Gray could have been eligible for placement on the TDRL, and subsequently a permanent Medical Disability Retirement based on the medical evidence showing a disability rating above 30%.

55. Alternatively, the BCNR and the advisory opinion, did not sufficiently address the possibility of a rating under VASRD 5250 for ankylosis of the right hip and summarily dismissed Mr. Gray's prior claim in 1988 for a rating under VASRD 5253.

56. Again, Mr. Gray's experimental treatment was an unlisted condition and ankylosis of the right hip could be a closely related disease or injury.

57. A rating under VASRD 5253 would have resulted in a disability rating over 30% and would have made Mr. Gray eligible for consideration for placement on the TDRL.

58. Neither the BCNR's final decision, nor the advisory opinion that the decision heavily relies upon, addressed Mr. Gray's argument for an initial classification under VASRD 5054 or VASRD 5250.

59. The advisory opinion, which the BCNR substantially concurred with, only briefly mentioned a VASRD 5010-5054 diagnosis, but did not consider the full effect a VASRD 5054 diagnosis would have on the TDRL placement analysis, nor provided specific findings on why such a code should not be applied.

60.   Mr. Gray also presented evidence and argument that the PEB should have adopted the MEB finding that his left shoulder injury was an unfitting condition and should have contributed to his overall disability rating.

61.   Neither the BCNR's final decision, nor the advisory opinion, considered Mr. Gray's argument regarding his left shoulder injury being an unfitting condition.

62.   The BCNR's final decision is also not adequately supported by substantial evidence. *Chappell v. Wallace*, 462 U.S. 296, 303 (1983).

63.   The BCNR failed to discuss the clear medical evidence presented by Mr. Gray that showed the severity of his injuries that warranted a different VASRD classification and higher disability rating.

64.   The BCNR's final decision does not discuss in detail Mr. Gray's medical records, nor does it consider medical evidence that pre and postdates his date of separation.  *See Beckham v. United States*, 392 F.2d 619, 622-23; 25 ("a physical disability which renders an officer unfit for duty is not always manifest at the precise time of separation. Consequently, we must look to manifestations of the disease or ailment appearing both before and after the point in time of separation.").

## VI.   PRAYER FOR RELIEF

Based on the foregoing, Mr. Gray respectfully requests that the Court grant him the following relief:

(1)  Set aside the decision of the BCNR;

(2)  Compel the Defendant to correct Mr. Gray's military record to state the discharge classification as Medical Disability Retirement;

(3)   Award Mr. Gray costs and reasonable attorney's fees as provided in 28 U.S.C. § 2412; and

(4)   Grant any other relief deemed by the Court to be necessary and appropriate.

Dated: April 20, 2020                                  Respectfully submitted,


/s/ *Miguel Eaton*
Miguel Eaton  (D.C. Bar No. 983157)
E-mail:  meaton@jonesday.com
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:   +1.202.879.3939
Facsimile:   +1.202.626.1700

Vincent A. Doctor  (CA Bar No. 319408)
(*pro hac vice submitted*)
E-mail:  vdoctor@jonesday.com
Jones Day
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:   +1.650.739.3939
Facsimile:   +1.650.739.3900

Attorneys for Plaintiff
STANLEY G. GRAY